THEJ subject of controversy in these causes, between James Burnsides, and Andrew Reid, on behalf of Samuel Culbertson, was four hundred acres of land, called Culbertsons bottom, clamed in right of settlement, with six hundred acres of the land adjacent, clamed in right of preemption.
Andrew Culbertson had made a settlement on the land called *his bottom, in 1753; left it through fear of the indians; and afterwards sold it to Samuel Culbertson.
During several years afterwards, that part of the country was infested by the enemy, so that the place appeared to be deserted by the Culbertsons, although they seem to have done every thing, which they could do safely, to prevent the belief of an intended dereliction.
There removal however having been to a great distance, before Samuel Culbertson could assert his title conveniently, other men claimed the land which had been settled, all whose pretentions at length con-centered in Thomas Barley or Barlow, who paid for it the purchase money demanded by some men, called the loyal company, to whom the governor in council had granted leave to appropriate an enormous territory, including within its limits, if it can be said to have limits, this parcel.
In March, 1775, Thomas Barley procured the land, which he had thus bought, being 355 acres, to be surveyed, and took a certificate thereof, in order to obtain a grant so soon as the land office, then occluded, should be opened ; and assigned his right to James Burnsides.
In may, 1779, Samuel Culbertson, by letter of attorney, impowered Andrew Reid to demand, and institute process for recovering possession of the land.
In 1782, the controversy was exhibited before the court of commissioners, a tribunal, constituted by statute in 1779, for deciding cases between litigant settlers, by their sentence the right of James Burn-sides to four hundred acres of land, including the three hundred and fifty live, which had been surveyed for Thomas Barley, in right of settlement, and to six hundred acres adjacent, in right of preemption, was sustained,
Andrew Reid, having entered a caveat against emanation of a grant to James Burnsides, which otherwise would have passed the seál, upon a certificate of the adjudication by the commissioners, presented a petition to the. general court, stating that unavoidable accidents had disabled him to produce before the commissioners, at the time of their session, testimony, which otherwise he could have produced, sufficient to support his clame, and praying the same to be considered, the general court allowed a hearing, and thereupon, the 12 day of October, 1784, reversed the adjudication of the commissioners, and awarded that a grant should issue to Samuel Culbertson for the lands clamed both by settlement and preemption.
To obtain an injunction for staying execution of this judgement of the general court, on certain grounds stated in the bill, and to compel the defendent Thomas Walker, an agent for the xloyal company, to yield his consent to a grant to James Burnsides of the land clamed by him, were the objects of the suit, in which he was plaintiff, an injunction, until further order, was granted, in may, 1785. the grounds stated in the bill were, 1, that the right of Culbertson, which originated in a settlement, a species of right never adopted for legitime before 1779, was by the statute of that year, postponed to every other right therein recognized, so that the right of Thomas Barley now derived to James Burnsides, which was by survey, and established by that act, although the survey were posterior to the settlement, must be superior to the right by settlement, and therefore ought to prevale against it. (a) 2, that the decree, as it is called, of the court of appeals, the 2 day of may, 1783, on the clames of Thomas Walker and Thomas Nelson, some way or other, determined the question in this case in favour of James Burnsides, (b) 3, that James Burnsides had the right even of Andrew Culbertson by purchase from one to whom it had been transfered, before the pretended sale to Samuel Culbertson, (c)
Before the defendents in that suit had answered the bill, James Burnsides, having, in january, 1786, procured to be made a survey of 1200 acres of land, including the lands in controversy, and a certificate thereof, surreptitiously obtained a grant to himself of the said lands, of which grant a repeal is the object of the other suit, commenced against him by Andrew Reid.
On hearing these causes together the 15 day of may, 1792, the opinion and decree of the high court of chancery were pronounced in these terms.
‘The court is of opinion that James Burnsides, after obtaining an injunction to stay execution of a judgment by the general court against him, having pro *170 cured a survey to be made, and a grant to himself to pass the seal, of land, to which land the title of Samuel Culbertson was asserted by that judgement, and which according to the judgement would have been secured to him by a grant, if James Burnsides had not prevented it, was guilty of a fraud, because the register of the land office, if he had known such a judgement to have been rendered, by which he was ordered to issue a grant of that land to the said *Samuel Culbertson, ought not to have issued, and therefore probably would not have issued, the grant to Burnsides, and the courtis also of opinion that Andrew Reid, on whom the right of Samuel Culbertson hath devolved, is not barred of relief against James Burnsides, by the decree and order of the court of appeals, on hearing the clames of Thomas Walker and Thomas Nelson, not only because a clame under the survey for Thomas Farlow, which James Burnsides in his bill suggests to be the foundation of his title, doth not appear to have been established by the decree and order of the court of appeals, and could not be legally established, so as to bind the right of any who were not parties in that proceeding but, because the grant to James Burnsides was founded, not on that survey, but on a survey' certified to have been made for himself, in january, 1786, by virtue partly of an entry, on a certificate from the commissioners for the district of Washington and Montgomery counties, for 400 acres, dated the 10 of September 1782, which certificate of the commissioners, with their adjudication affirming the right of James Burnsides, was annulled by the general courts judgement aforementioned, and now the court would have pronounced such a decree as in its opinion, if what followeth had not happened, ought to be made — a decree nearly like that which was pronounced in the case between James Maze, plaintiff, and Andrew Hamilton and William Hamilton, defend-ents; but that decree hath been reversed by the court of appeals; and this court, from that reversal, supposeth, perhaps erroneously, the opinion of that honorable court to have been, that, by the order of council, granting leave to the greenbrier company to take up 100000 acres of land, lying on Greenbrier river, northwest and west of the Cowpasture and Newfoundland, all lands within those limits, if they must be called limits, were appropriated, so that the company or their agent had power to survey and sell any parcel, which they should chuse, of such land although another man had settled on the parcel before the surveying and selling, and although the act of general assembly, passed in the year 1779, had declared to be just, that those who had settled on the western waters, upon waste and unappropriated lands, for which they had by several causes been prevented from suing out grants, under such circumstances, should have some reasonable allowance for the charge and risque they' had incurred, and that the property so acquired should be secured to them; the honorable court seeming to have understood that, by the terms waste and unappropriated lands, to which no other person hath any legal right or clame, the act intended lands which the company had not chosen to survey, after, *as well as before, they had been settled; whereas some, who have observed that the surveys made by orders of council and confirmed by the act are surveys of waste and unappropriated lands, likewise, think the application of the term, unappropriated, in the case of lands surveyed by orders of council to lands not settled before the surveys, would be found criticism; especially the act having dignified the settlement with the emphatical appellation of property, property acquired, and acquired at large and risque, means of acquirement generaly' esteemed meritorious; and think the words lands, to which no other person hath any legal right or clame, more restrictive than the words lands unappropriated, which comprehend lands to which no other person hath any right or clame, whether legal or equitable; and the honorable court seeming to have understood that the act, by the terms upon lands surveyed for sundry companies, &c., people have settled, &c., in the seventh section, designed to include lands surveyed as well after, as before, the settlements; whereas some commentators conceive that the interpretation, which confineth the words to surveys prior to the settlement, is not inconsistent with the rules of grammar, with the intention of the legislature, or with the principles of natural justice, and this court supposeth the opinion of the honorable court to have been, that where a settler of land, surveyed after his settlement by virtue of the companys order of council, had obtained a grant of the land, including an additional quantity in right of preemption, one who was a prior settler, recovering the settlement from the grantee on that principle, shall not recover with it the preemption land; whereas others think that he, who recovereth in right of priority, ought to be in the condition in which he would have been, and consequently ought to have the preemption, to which he would have been intitled, if the posterior settler had not obtained the grant, and this court also supposeth the right of the loyal company, under whom James Burnsides in the principal case clameth, and the territorial limits of whose order of council are not more definite than those of the other company, to be no less extensive, and not less to be prefered to the rights of settlers, than the rights of that other company; on these suppositions, this court, in order to such a final decree as at this time is believed to be congruous with the sentiments of the court of appeals, doth direct (d) that a survey be made of the 400 acres of land, for the settlement by Andrew Culbertson, which may be laid down as either party *171 shall desire, to enable the conrt to decide between *them on the propriety or reasonableness of the location ; that the patent of James Burnsides be also surveyed and laid down, to shew how much it includeth of the 400 acres; and when this shall be adjusted, the court doth adjudge order and decree that James Burn-sides do convey to Andrew Reid the inheritance of so much of the 400 acres as shall be found to lie within the bounds of the said patent, with warranty against himself, and all claming under him, and deliver possession thereon upon Andrew Reids paying to him, at the rate of three pounds per hundred acres, for the quantity so to be conveyed, that as to those 400 acres the bill of James Burnsides be dismissed; and, as to the residue of the land contained in the patent, that the bill of Andrew' Reid be dismissed ; but Andrew Reid is nevertheless to be at liberty to procede to survey the 600 acres of land for his preemption, if he can find land to satisfy the same, without interfering with the said patent, or any other prior clame. ’
From this decree both parties appealed, each from so much of it as partialy dismissed his bill.
On the 19 day of november, 1794, the court of appeals pronounced their opinion and decree in these term:*
‘The court, having maturely considered the transcript of the record and the arguments of the counsil, is of opinion, that the said decree is erroneous in this, that, after setting aside Burnsides patent, for fraud, so far as it comprehended the lands adjudged by the general court, in 1784, to sainuel Culbertson for his settlement right, it makes the preemption clame of the said Culbertson, founded on the said judgment, yield to the patent of the said Burnsides, which was not obtained till 1786; which patent appears to have been obtained upon a survey made in 1786; and herein this case differs from the case of Maze against Hamilton, because that survey was made under the greenbrier company in 1775 :† therefore it is decreed and ordered, that the said decree be reversed (e) and annulled, and that the said James pay to the appellees, in the first suit, and to the appellant, in the second, their costs by them in this behalf expended. and this court, proceding to make such decree as *the said high court of chancery should have pronounced, it is further decreed and ordered that a survey be made of 400 acres of land, for Culbertsons settlement, and 600 acres adjoining, which may be laid down as either party may' require, to enable the court of chancery to determine as to the reasonableness of the location; that the patent to James Burnside be also surveyed and laid down, to shew how much it in-cludeth of the 1000 acres, and, when this shall be adjusted, that the said James Burnsides be decreed to convey to the said Andrew Reid the inheritance of so much of the 1000 acres as shall be found to lie within the bounds of the said patent, with warranty against himself and all claming under him, and deliver possession, upon his paying to the said Burnsides, at the rate of three pounds per hundred acres, for the quantity so to be conveyed; that as to those thousand acres the bill of the said Burnsides be dismissed; and as to the residue of the lands contained within his patent, that the bill of the said Reid be dismissed, and that the said Burnsides pay to the other parties their costs in each suit in the high court of chancery.
REMARKS.
The decree is admitted to be erroneous, by him who delivered it, and who declared, at the time, that it did not accord with his own opinion, but that it was congruous, as he believed, with the sentiments of the court of appeals, he was mistaken, but, perhaps, to avoid such a mistake will not seem easy to one who peruseth the reversing decree, and endeavoureth to connect the conclusion, begining at the word, therefore with the premises, (f)
The reversed decree is said to make the preemption clame of Culbertson yield to the patent of Burnsides, obtained not before 1786; but that decree is denied to contain such terms, or terms of such meaning.
This case is said to differ from the case of Maze and Hamiltons, because that survey was made under the greenbrier company in 1775.
Bet us inquire whether this difference exists.
In 1775, Samuel Lewis, an agent of the greenbrier company, surveyed 1100 acres of land, including a place on which James Maze had settled more than ten years before ; whence the place derived the appelation Mazes cabbin.
In the certificate of survey a blank was left for the name of *him who should purchase from that company, both Hamilton and Maze had treated with the agent for a purchase, but before any bargain with either, both of them exhibited their clames before the court of commissioners, who sustained that of Hamilton, this judgement, upon a caveat and petition by Maze, was reviewed and reversed by the general court, who awarded to him the settlement and preemption.
Hamilton, thus defeated, and being denied by the general court an appeal from *172 their sentence, and being- also denied a writ of error, for which he applied to the court of appeals, renewing the treaty with the agent, concludes a bargain, procures his name to be inserted in the blank left for it in the certificate of survey, and, bringing that certificate to the. land office, obtains a grant; the register not knowing the land, to which Mazes title had been asserted by the general court, to be included in the grant.
Maze brought a bill in equity to be relieved against the grant; and, by the decree of this court, was reinstated in the condition in which he would have been, if Hamilton had not practiced the fraud, for which decree the reasons were stated at large, it was reversed by the court of appeals, declaring it in general terms to be erroneous, and directing another decree to be entered, wtyereby Maze was allowed to retain so much of the settlement as lieth on one side of a line, (g) said to have been made by agreement between Maze and one Tacket, to run from Wachubs spring; and Hamilton was allowed to retain all the rest of the land, and consequently the preemption.
Whatever principles may have governed the court of appeals, in the formation of their decree, in the case between Maze and Hamiltons this appeareth certain, namely, that, according to their opinion, the preemption was attached to the right by survey, and not the right by settlement: and if so, the case of Reid and Burnsides, differs not, as is conceived, from the case of Maze and Hamilton, as the court of appeals say it doth in that particular.
For although the grant to James Burn-sides was obtained upon the certificate of a survey performed 1786, yet the identical plot of ground in controversy, Culbertsons bottom, included in that survey and grant, had been surveyed in march, 1775, for Thomas Earle}', who had purchased from the loyal company, and transferred his right to James Burnsides.
*If then to the right by survey, in 1775, was attached the preemption, in the case between Maze and Hamiltons, to the right by survey, in 1775, was attached the preemption, in this case; herein therefore the cases do not differ.
But from a real difference between the cases, he, who knew the grounds of decision in one of them, perhaps might have expectéd a decision in favour of James Burnsides in the other. The difference is this: the Hamiltons had not the greenbrier companys right to the survey, which includeth Mazes cabbin, until after his right to it had been asserted by the sentence of the general court, but Thomas Farley, from whom James Burnsides derives his clame, had the loyal companys right to the survey itself of Culbertsons bottom, long before the right of Culbertson, represented by Reid, was asserted by the sentence of the general court.
Now the court of appeals, when they decided the case between Maze and Hamilton, declared their opinion unanimously to be, that settlement gave no right to lands, in law or equity, before the act of 1779, and was then to operate upon mere waste land, not to defeat any clame of a citizen to lands under surveys by order of council, although the settlements were before the surveys— and when they decided the case between Williams and Tomlinson, plaintiffs, and Jones, defendent, declared their opinion, without dissention, to be, and accordingly resolved, that a survey, by authority of even a military warrant located upon land, then in actual possession of settlers, should prevale over their right, and sanctify their expulsion.
Why then was the right of James Burn-sides under a survey, which the loyal com-panys order of council authorised, defeated by Culbertsons settlement right? for that Culbertson derived any right from that company by purchase or agreement, is not proved or even suggested.
That the decree now directed is the decree which, one part of it excepted, the high court of chancery ought to have pronounced, is admitted, for reasons stated in the decree of that court in the case between Maze and Hamiltons, and hereinafter mentioned, the exceptionable part is that whereby the three pounds per hundred acres which was the money demanded by the loyal company illegaly, as is believed, from prior settlers were decreed to be paid.
The high court of chancery would have pronounced the decree here approved, because the judgement of the general court, in such a case as this, was, by statute, declared to be definite; so that no appeal from it should be allowed, if nevertheless the court of appeals felt themselves at liberty to examine the ^merits of such a case, and to alter the judgement in it, as they certainly did in the case between Maze and Hamiltons, this question might have occurred which, perhaps, deserved attention, whether a judgement or decr.ee against James Burnsides, who confessedly was a purchaser for valuable consideration, and who neither knew, nor is suggested to have known, anything of Culbertsons title, unless he be presumed to have known it because the place was called by that name, be consistent with precedents which can be FURNISHED in the court of appeals?

 'Phe climax of rights, here attributed to the statute, seems to have been fabricated by the companies of land mongers who, not content with the extravagant license granted to them by orders of council, perhaps as beneficial as if they had been boundless, wished to convert them into monopolies. —Note in edition of 1795.

 See the case between Maze and Ramiltons, ante 51.--Note in edition of 1796.

 The testimony in proof of this purchase is incredible. — Note in edition of 1795.

 Conformably with the decree entered by order of the court of appeals in the case between Maze and Hamiltons. — Note in edition of 1795.

ISee a wash, 13 -Ed ] — Note in edition of 1862.

 This naughty decree, as to the 400 acres of land, is repeated almost literaly, altho it is said to be ret ersed inti rely, by the correcting decree, another example of a decree said to be reversed, that is. intirely reversed, and yet agreeing in most parts of it with its corrector, occurreth in the case between Ross, plaintiff and Pleasants and others, defendants. — Note in edition of 1795.

 An example of this kind of argumentation may be seen in the cases between Hill and Braxton, plaintilfs, and. Gregory, defendent, ante 73. — Note in edition of 1795.

 From reports of the surveyor, directed to perform the decree of the court of chancery entered in obedience to the decree of the court of appeals, whether this line will ever he found seems doubt-full: and the researches for discovering' the spring-, either perennial or temporary, seems to have been hitherto not more successful! — Note in edition of 1795.

[†See the judgment of the Conrt of Appeals as to the claims of the Greenbrier and Royal Companies, which applies to surveys, properly qualified prior to 1776. and made by virtne of orders of council to said companies. —13d. | — Note in edition of 1852.